# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **GEORGE PAUL B., Jr.,**[1]       ) <br>                                      ) <br> **Plaintiff,**       ) <br>                                      ) <br> **v.**       ) <br>                                      ) <br> **KILOLO KIJAKAZI,**[2]       ) <br> **Acting Commissioner of Social Security,**       ) <br>                                      ) <br> **Defendant.**       ) <br> _____) | **CIVIL ACTION** <br><br> **No. 21-2075-JWL** |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614, Title XVI of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.**      **Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSI benefits on September 17, 2018. (R. 12, 206). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in evaluating his impairments as listed in §§ 1.04 and 11.02 of the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1), in assessing Plaintiff's residual functional capacity (RFC), and in failing to reconcile the vocational expert's (VE) testimony with the Dictionary of Occupational Titles (DOT).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments. Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R.

§ 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in the order presented in Plaintiff's Social Security Brief.

## II.     Step III, Listed Impairments

Plaintiff first argues the ALJ erred in finding his condition does not meet Listing 1.04 based on finding "there was not evidence of decreased strength after the amended alleged onset date [and] positive straight leg raising signs were not shown on a consistent basis."  (Pl. Br. 11) (quoting without citation R. 15).  He argues the ALJ's "statement simply belies [sic] the majority of the medical evidence in the file and in most respects is a gross misstatement of the evidence."  Id.  Plaintiff's cites record evidence for the proposition that there is evidence of muscle weakness and positive straight leg raising (R.

513, 735) and argues, "Numerous other medical records substantiate all of the findings necessary for the Plaintiff to meet or equal listing 1.04. (See for example Tr. 569, 809, 867, 858, 671, and 712)."  (Pl. Br. 11).

Next, Plaintiff argues he has a severe impairment of traumatic brain injury, that he has headaches which are a medically determinable impairment resulting from that trauma, and the ALJ did not meaningfully consider his headaches.  Id. at 12.  He argues, "The ALJ should have applied the same analysis to Plaintiff's headache disorder as she would to a seizure disorder in accordance with SSR 19-4p.  Had she done so, she would've found that this headache disorder equals listing 11.02 because they have a very similar disabling effect as would seizures."  Id. at 14.

## A.     Step Three Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling.  20 C.F.R. § 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, the claimant "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)); see also, Thompson v. Sullivan, 987 F.2d

1482, 1487 (10th Cir. 1993) (burden shifts to Commissioner only at step five).  "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."  Yuckert, 482 U.S. at 153.  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively."  Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

### B.     Listing 1.04

The court finds no error in the ALJ's consideration of Listing 1.04.  As Plaintiff points out, the ALJ found his condition does not meet or equal Listing 1.04 because during the relevant period there is no evidence of decreased strength and "positive straight leg raising signs were not shown on a consistent basis."  (R. 15).  Plaintiff cites record evidence allegedly showing positive straight leg raising and muscle weakness (R. 513, 735) or substantiating "all of the findings necessary for the Plaintiff to meet or equal listing 1.04. (See for example Tr. 569, 809, 867, 858, 671, and 712)."  (Pl. Br. 11). However, the evidence cited simply does not say what Plaintiff asserts.  Much of the

evidence cited is merely the signature page or the cover letter for an entire exhibit with no citation to specific statements or findings in those exhibits allegedly supporting the Listing criteria.  (R. 513, 671, 712, 735, 858).  The remainder of the citations do not show clinical findings of positive straight leg raising or muscle weakness.

The ALJ's decision, however, cites medical records showing both positive straight leg raising (R. 732, 862) and negative straight leg raising (R. 664, 710, 798), and no motor loss or 5 out of 5 (5/5) strength in the lower extremities.  (R. 664, 710, 731, 798, 862).  Beyond his personal statements to medical providers or to the SSA of muscle weakness, Plaintiff has not cited and the court has not found clinical evidence of motor loss (muscle weakness, atrophy, decreased strength) in the record.  While it might be argued the ALJ did not properly consider or sufficiently explain his findings with regard to straight leg raising, the court need not reach that issue because in order to meet or equal Listing 1.04, Plaintiff must demonstrate that he meets all of the criteria of that Listing, and he has not shown motor loss.  Plaintiff has shown no error in the ALJ's consideration of Listing 1.04.

### C.     Listing 11.02

Plaintiff's argument regarding Listing 11.02 also fails because he has shown no record evidence that his headaches meet or equal the criteria of that Listing.  The ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (R. 15) (finding no. 3, bold omitted).  Plaintiff may not require remand merely for a failure to discuss whether the criteria of a particular impairment are

met or medically equaled, but he must show a failure to consider the impairment and that alleged failure was harmful.  He has not done so and cannot do so on the record here.

SSR 19-4p explains the means whereby a claimant might establish a primary headache disorder medically equals Listing 11.02 for epilepsy (dyscognitive seizures).

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder.  While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing.
>
> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.
>
> ***
>
> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning.

SSR 19-4p, Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, 2019 WL 4169635, *7 (SSA Aug. 26, 2019).

On this record, Plaintiff has not shown, and the court does not find evidence of, prescribed treatment for his headaches, much less adherence to prescribed treatment for three months during the relevant time period as Listing 11.02 requires.  On the face of the record here it is by no means clear the ALJ erred in failing to mention Listing 11.02 or SSR 19-4p when considering Plaintiff's impairments, but if she did, any error was harmless.

**III.   Assessment of RFC**

8

Plaintiff argues the ALJ erred in assessing RFC in that she failed to account for limitations resulting from his headaches (Pl. Br. 16), ignored his "well-supported testimony … that he can stand and/or walk for only a few minutes at a time and that he has needed to use a cane or a walker for most of the past three years in order to ambulate, failed to account for limitations "due to his overwhelming low back pain," did not account for his "inability to read or write, or perform even simple math calculations," id. at 17, and did not account for off-task time "due to his ADHD impairment." Id. at 18.

The Commissioner argues the ALJ assessed Plaintiff's RFC properly. She argues the ALJ properly evaluated the prior administrative medical findings, found them persuasive, and "additionally limited Plaintiff to standing and walking no more than four hours in an eight-hour workday; avoiding exposure to hazards, extreme cold, and vibration; operating foot controls only occasionally; and needing the option to alternate between sitting and standing every 30 minutes." (Comm'r Br. 7-8). She argues the ALJ properly evaluated Plaintiff's allegations of disabling symptoms and found the allegations inconsistent and inconsistent with the record evidence. Id. at 8. She argues the ALJ also found greater mental limitations than any psychologist of record. Id. at 11.

The court agrees with the Commissioner that the ALJ's RFC assessment followed the correct legal standard and is supported by substantial record evidence. As is usually the case in a Social Security disability case, the record contains evidence tending to support disability and other evidence tending to support finding non-disability. It is the ALJ's duty to weigh that evidence and reach a reasoned and reasonable decision regarding disability. She has done so here and although Plaintiff points to record

9

evidence suggesting otherwise, he does not point to evidence compelling a different result nor negating the evidence relied upon by the ALJ to find nondisability. Plaintiff relies primarily on his own reports of limitations resulting from his impairments but ignores the ALJ's finding that his allegations are not consistent with the record evidence, nor the ALJ's stated reasons in support of that finding. (R. 18). The ALJ summarized the objective medical evidence and examination findings, noting findings both favorable and unfavorable to a finding of disability. Id. at 18-21. She then specifically noted that Plaintiff's "allegations of disabling limitations are not supported by the objective medical evidence and examination findings as noted above." Id. at 22. Then she explained her evaluation of the other record evidence and the inconsistencies therein leading her to discount Plaintiff's allegations. Id. at 22-23. In that explanation she explained her findings, among others, that use of a cane was not medically necessary, and that Plaintiff is not illiterate as he claims. Id. Moreover, the ALJ noted Dr. Mintz's finding Plaintiff "could do basic addition and subtraction but not multiplication or division arithmetic," id. 20, and she found Dr. Mintz's "opinion persuasive as to the claimant's capacity to perform simple instructions and tasks." Id. 24.

The ALJ provided reasons for her findings, record evidence supports the ALJ's findings, and the court may not reweigh the evidence and substitute its judgment for that of the ALJ. Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172. Plaintiff must demonstrate the error in the ALJ's rationale or findings; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

## IV.     Conflict Between the VE Testimony and the DOT

Plaintiff points out that the ALJ assessed Plaintiff with the mental ability to "understand simple instructions and [to] perform simple, routine, repetitive tasks." (R. 17) (finding no. 4, bold omitted). He argues such an RFC "describes occupations with an SVP of one. [But the] three occupations listed by the VE all required an SVP of two." (Pl. Br. 19). He argues the ALJ failed to reconcile this inconsistency. Id. He argues,

> In Hackett v. Barnhart, 395 F.3d 1168 (10th Cir. 2005), the 10th Circuit found a conflict between a GED reasoning level of three and an RFC limiting the Plaintiff to simple and routine work. The court, citing the 8th Circuit opinion Lucy v. Chater, 113 F.3d 905 (8th Cir. 1997), held that the RFC limitation was inconsistent with the demands of level III reasoning. In the more recent case of Paulek v. Colvin, 662 F. App'x 588 (10th Cir. 2016), the 10th Circuit affirmed that this rule would also apply to a GED reasoning level of two. Thus, a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions. Therefore, following the 8th Circuit's reasoning in Lucy, a limitation to simple instructions is inconsistent with both level-two and level-three reasoning. [See also MacDonald v. Berryhill, 2018 WL 806221, at *4 (D. Kan. 2018) (finding a conflict between a GED reasoning level of two and an RFC limiting the Plaintiff to simple work instructions).]

(Pl. Br. 20.

The Commissioner argues GED reasoning levels

11

> equate, not to the specific mental or skill requirements of an occupation as Plaintiff suggests, but to educational attainment—a distinction which the Tenth Circuit has acknowledged in recent years.  See Anderson v. Colvin, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished) ("GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job."); Mounts v. Astrue, 479 F. App'x 860, 868 (10th Cir. 2012) (unpublished) (GED reasoning levels describe "the level of formal and informal education required to perform a specific job," not its specific mental or skill requirements).  And, under agency regulations, even a marginal education (sixth grade or less) equates to the reasoning ability needed for simple, unskilled types of jobs like the ones at issue here.  See 20 C.F.R. § 416.964(b)(2).

(Comm'r Br.13-14).

The ability to perform unskilled work is dependent more upon the SVP level of the work as recorded in the DOT than it is upon the reasoning level.  The regulations define "unskilled work:"

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength.  For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and <u>a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed</u>.  A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 416.968 (emphasis added).  The court also notes that VEs are experts in the evaluation of vocational terms not laymen, attorneys, or even courts.

The DOT defines SVP:

> Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.

> This training may be acquired in a school, work, military, institutional, or vocational environment. It does not include the orientation time required of a fully qualified worker to become accustomed to the special conditions of any new job. Specific vocational training includes: vocational education, apprenticeship training, in-plant training, on-the-job training, and essential experience in other jobs.

DOT, App'x C, II, available online at: [Appendix C: Components of the Definition Trailer - DOT Dictionary of Occupational Titles (occupationalinfo.org)](#) (last visited May 24, 2022). There are nine SVP levels which are mutually exclusive, do not overlap, and range from level 1, "Short demonstration only" to level 9, "Over 10 years." Id. The time required for SVP 1 is "Short demonstration only" and for SVP 2 is "Anything beyond short demonstration up to and including 1 month." Id.

Reasoning level, on the other hand is defined in the DOT as one of three divisions in the General Educational Development (GED) Scale. Id. at III. GED is also defined in the DOT:

> General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study.
>
> The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development.

Id. App'x C, III. The GED reflects 6 levels each, of Reasoning Development, Mathematical Development, and Language Development. Id. As relevant here, the court quotes the DOT definition of Reasoning Development Levels 1, 2, and 3:

> 01 LEVEL REASONING DEVELOPMENT

> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

Id. available at: Appendix C: Components of the Definition Trailer - DOT Dictionary of Occupational Titles (occupationalinfo.org) (last visited May 24, 2022).

> 02 LEVEL REASONING DEVELOPMENT
>
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

Id.

> 03 LEVEL REASONING DEVELOPMENT
>
> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

Id. The Tenth Circuit has held that a mental RFC limited to "the attention, concentration, persistence and pace levels required for simple and routine work tasks" is inconsistent with the demands of level-three reasoning. Hackett, 395 F.3d at 1176 (quoting the RFC assessed for Ms. Hackett, and citing Lucy, 113 F.3d at 909). The court went on to note that "level-two reasoning appears more consistent with [Ms. Hackett's] RFC." Id.

Although this court disagrees with the reasoning of the Tenth Circuit in this regard, Carolyn J. S. v. Saul, Civ. A. No. 18-4049-JWL, 2019 WL 2523575 at *3 (D. Kan. June 19, 2019) (agreeing with the well-reasoned decision in Rom v. Colvin, No. 15-CV-402-FHM, 2016 WL 3528059 at *3 (N.D. Okla. June 23, 2016); see also, Karen Jean M. v. Saul, Civ. A. No. 19-2455-JWL, 2020 WL 5057488, at *12-14 (D. Kan. Aug. 27,

2020) (discussing the interplay among Specific Vocational Preparation, General Educational Development, and Reasoning levels 1-3), Hackett is precedent binding on this court and the court consistently holds that representative jobs requiring reasoning level three are beyond the RFC assessed for Plaintiff and are erroneously relied upon in cases such as this. E.g., Stephanie Beth D. v. Kijakazi, Civ. A. No. 20-2622-JWL, 2022 WL 1136192 at *9 (D. Kan. April 18, 2022); Suzanne I. v. Saul, Civ. A. No. 19-1213-JWL, 2020 WL 2747184 at *5, (D. Kan. May 27, 2020); Carolyn J. S. v. Saul, Civ. A. No. 18-4049-JWL, 2019 WL 2523575 at *2-3 (D. Kan. June 19, 2019).

Here, however, the ALJ did not rely on any representative jobs requiring reasoning level 3. Nonetheless, Plaintiff argues the "10th Circuit affirmed that this rule would also apply to a GED reasoning level of two" in Paulek and that "following the 8th Circuit's reasoning in Lucy, a limitation to simple instructions is inconsistent with both level-two and level-three reasoning." (Pl. Br. 20). This rationale fails for several reasons. First, Paulek is an unpublished opinion not binding on this court.

Second, and most importantly, Paulek did not affirm that the rule in Hackett also applied to level two reasoning. Rather, Paulek recognized the rule from Hackett relied upon Lucy but was premised on "a limitation to 'simple and routine work tasks.'" It also recognized the Tenth Circuit had "not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions" which was the limitation in Paulek. Paulek, 662 F. App'x at 594. Because the Eighth Circuit held in Lucy "that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning," the court accepted that both the limitation at issue in Hackett

15

(simple and routine work tasks) and that before the court in Paulek (carrying out simple instructions) should be treated the same. Paulek, 662 F. App'x at 594 (citing Lucy, 113 F.3d at 909). The court in Paulek remanded, noting "the Commissioner will need to elicit a reasonable explanation as to how Mr. Paulek can perform two level-three-reasoning jobs with a limitation to carrying out simple instructions or proceed to step five." Id., 662 F. App'x at 594 (emphasis added). The question in Paulek was whether level three reasoning was consistent with a limitation to carrying out simple instructions. The court held that Hackett required finding it was not. Even if the Paulek court found the rule in Hackett also applied to level two reasoning, which it did not, that finding would have been merely dicta not binding on this court because there were no level two reasoning jobs in the case before Paulek.

Finally, the court notes that the 8th Circuit's opinion in Lucy and the district court's opinion in MacDonald are not binding on this court. Moreover, the court does not find them persuasive because they did not consider the interrelationship between SVP, GED, and reasoning levels one, two, and three as discussed above, and in particular did not focus on the entire definition of each reasoning level as discussed above while recognizing that unskilled work is work at SVP levels 1 and 2 which includes work involving reasoning levels one, two, and three.

The court finds no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

16

Dated May 26, 2022, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**